and that they were kept in a place provided by the landlord. The space at the foot of the stairs was variously estimated to be from 18 inches to 2½ feet in width, and was obviously intended merely as a means of access to the basement store, and not as a separate and distinct part of the premises that was reserved from the demise. This fact distinguishes the case at bar from Hammersmith v. Cohn, 132 N. Y. Supp. 323, in which the steps did not lead to the basement store alone, but also to a hall or area which the landlord used to collect the ash barrels for his tenement house, and that these steps were used by the landlord's janitor for bringing the barrels up and down. The court said:

"It appears, therefore, that they [the stairs] were not only the means of ingress to and egress from the store leased to plaintiff's husband, but also to and from a portion of the premises over which the defendant kept undisputed control."

The use of this small space for an ash barrel was not shown to be with the knowledge and approval of the owner (McCallum v. Dodge, supra), nor was this small space a portion of the premises within the undisputed control of the landlord.

[3] The learned justice charged the jury that if they believed that the ash cans were kept down at the foot of those basement steps, and that they were taken down there by the occupants of the premises other than the tenant, that would bring it within the rule of being occupied by or used in common by other tenants. This instruction did not sufficiently instruct the jury that they must find that the stairs were reserved from the demise for the common use, or that such use was within the knowledge and consent of the owner, from which such a reservation might be implied. We note that there have been two trials of this action, on the first of which no evidence of the existence of the ash barrel at the foot of the stairs, or of the use of the stairs by other tenants, was offered, and also that between the two trials the opinion in the case of Hammersmith v. Cohn, supra, was published. The evidence of the existence of these facts is not very convincing to our minds. We feel that the interest of justice will be subserved by a new trial.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event. All concur.

---

POLLITZ v. WABASH R. CO. et al.

(Supreme Court, Appellate Division, First Department. May 31, 1912.)

1. CORPORATIONS (§ 386*)—STOCK—ILLEGAL PLAN OF ISSUE—RATIFICATION.

Issue of preferred stock, except with the consent of the stockholders, being prohibited by the Constitution of the state under laws of which the corporation was organized, ratification by a majority only of its stockholders of a plan of issue of such stock cannot validate it.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1554, 1555; Dec. Dig. § 386.*]

**2. CORPORATIONS (§ 71*)—PREFERRED STOCK—ISSUE—STATE CONSTITUTIONS.**

The provision of a state's Constitution, that "no corporation shall issue preferred stock without the consent of all the stockholders," cannot be taken as limited to an original issue of preferred stock, as distinguished from an issue of increased preferred stock, by reason of a statute of the state, that "any corporation may increase its capital stock * * * with the consent of" the holders of a majority of its stock; the Constitution controlling in case of any inconsistency.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 447; Dec. Dig. § 71.*]

**3. CORPORATIONS (§ 71*)—ISSUE OF STOCK—CORPORATION OF TWO STATES.**

A corporation being organized under the laws of two states, an issue by it of preferred stock without the consent of all its stockholders, required by the Constitution of one of the states, is illegal, though the meeting, at which the plan of issue was adopted, was held in the other state and the laws thereof would permit it.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 447; Dec. Dig. § 71.*]

**4. ACTION (§ 7*)—STOCKHOLDERS' SUIT—INQUIRY AS TO MOTIVE.**

If plaintiff, in a derivative action by a stockholder, shows a legal right to question the corporate acts, and has a personal interest in obtaining the judgment which he seeks, equity will not consider his motive in acquiring his stock or his purpose in enforcing his actual rights.

[Ed. Note.—For other cases, see Action, Cent. Dig. § 8; Dec. Dig. § 7.*]

**5. ESTOPPEL (§ 68*)—STOCKHOLDERS' SUIT—PROTESTS AND SUITS ON OTHER GROUNDS.**

Barring the question of res judicata, a stockholder is not estopped to maintain a suit attacking on a certain ground of invalidity therein a plan of issue of stock because his protest against the plan when it was adopted was on other grounds, and other suits by him after such protest attacking the issue were on other grounds.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 165–169; Dec. Dig. § 68.*]

**6. PLEADING (§ 204*)—PARTIAL DEFENSE—PLEADING AS COMPLETE DEFENSE.**

Purchasers of stock of a new issue not being necessary parties to a suit by a holder of original stock attacking validity of the plan of issue of the new stock, their omission, if limiting the scope of the judgment which may be rendered, and available to defendants, is only a partial defense, so that the pleading of it as a complete defense is open to demurrer.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 486–490; Dec. Dig. § 204.*]

Appeal from Special Term, New York County.

Suit by James Pollitz against the Wabash Railroad Company and others. Plaintiff demurs to separate defenses. Demurrers overruled. Plaintiff appeals. Affirmed.

See, also, 142 App. Div. 755, 127 N. Y. Supp. 782.

The following is the opinion of the lower court by Bischoff, J.:

The plaintiff, a stockholder of the defendant the Wabash Railroad Company, attacks the validity of a plan for the issue of bonds and stock of the corporation in exchange for $30,000,000 of its debenture bonds outstanding. This plan, as alleged, provides for the exchange of $795 of new bonds, $580 preferred stock, and $580 common stock for each $1,000 par value of debenture bonds, classed as series A, and for the exchange of $720 of new bonds, $520 preferred stock, and $520 common stock for each $1,000 par value of debenture bonds, series B. The ground of attack, as indicated by the complaint, is that the proposed exchange of securities was ultra vires the corporation and actually illegal, in that the Constitution of the state of Missouri, one of the states under whose laws the corporation was organized, pro-

hibits the issue of preferred stock except upon the consent of all the stock-holders, whereas the plan in question, which provides for the issue of preferred stock, was not so approved. Further, it is alleged that the proposed issue of bonds and stock is fictitious and contrary to the statutes of the several states applicable to the conduct of business by the defendant corporation, in that the new securities were not to be exchanged for property equal in value to their par value; the debenture bonds to be taken in exchange being worth less than par. The complaint also contains averments indicating that directors voting for the plan were the holders of debenture bonds and so personally interested, in hostility to the interests of the corporation.

Four affirmative defenses are interposed, and the issue of law before me is presented by demurrer to each defense for insufficiency of substance.

[1] By the first defense ratification of the plan by a majority of the stockholders is asserted. Whether or not the facts alleged in this defense as to the history of the transaction may be deemed to afford a sufficient basis for an effective ratification of the acts of directors who were personally interested, there can be no doubt that the illegality of the plan, so far as it provides for the issue of preferred stock without the consent of all the stockholders, is not affected by anything which the defense contains. Admittedly, preferred stock is planned to be issued without the unanimous consent which the Constitution of Missouri requires, and as the pleadings stand the words of the Constitution, taken as correctly stated in the complaint, are that "no corporation shall issue preferred stock without the consent of all of the stockholders." Here appears to be an absolute prohibition of an act which is integral to the plan now attacked, and ratification by a majority of the stockholders could not make that act valid since the very law itself defines the extent of the ratification required. An illegal corporate act cannot be ratified by majorities of stockholders. Taylor v. Earle, 8 Hun, 1.

[2] I find no force in the contention that this explicit provision of the Constitution of Missouri may be limited to an original issue of preferred stock as distinguished from an issue of increased preferred stock. Thus, the statutes of Missouri, as alleged, provide: "Any corporation may increase its capital stock or its bonded indebtedness with the consent of the persons holding the larger amount in value of the stock." But this enactment does not serve in any way to suggest a limited meaning of the constitutional provision. If there were an inconsistency, the statute would, of course, give way in view of the clarity of expression employed in the Constitution; but there is no inconsistency. The statutory provision relates to an increase of capitalization generally, while the Constitution calls for unanimous consent of the stockholders where a distinction is to be made between classes of stock to represent the adopted or increased capitalization.

[3] It is unnecessary to differentiate between the laws of Ohio and Missouri upon the question of the legality of the issue of preferred stock. From the admitted allegations of the complaint, this corporation was bound by the laws of Missouri as well as the laws of Ohio, and the mere fact, as alleged in this defense, that the meeting at which the plan was adopted was held in Ohio, does not affect the question. Undoubtedly, the meeting, called in conformity with the laws of Ohio, was regular; but the corporate acts had to conform to all the laws under which the corporation was empowered to act at all. The fact that the plan in question involves the doing of an act which was prohibited by laws applicable to the dealings of the defendant corporation is thus apparent from the complaint, and the first separate defense contains nothing to meet the plaintiff's case for relief against the carrying out of the illegal transaction. The demurrer to this defense is, therefore, to be sustained.

[4] The second defense is to the effect that the plaintiff knew of the matters to which his complaint is directed when he purchased his stock, and that he acquired his holdings as a mere interloper for the purpose of bringing this action and to compel the defendants to purchase immunity from litigation by taking over his stock at an excessive price. While there are intimations in some cases that a court of equity will inquire into the plaintiff's motives when acquiring stock which is made the basis of his right to bring a derivative action of this character (Sayles v. Central Bank, 18 Misc. Rep. 155, 41 N. Y. Supp. 1063; Kingman v. Railroad Co., 30 Hun, 73), the

actual rule, when applied in cases disclosing an obviously ulterior motive in bringing the suit, is that, if the plaintiff shows a legal right to question the corporate acts and has a personal interest in obtaining the judgment which he seeks, his motives are not to be made the subject of inquiry. In other words, that his purpose in enforcing his actual rights in a derivative action does not present a question of good faith with which equity is concerned. Ramsay v. Gould, 57 Barb. 398, 402; Young v. Drake, 8 Hun, 61; Rice v. Rockefeller, 134 N. Y. 174, 186, 31 N. E. 907, 17 L. R. A. 237, 30 Am. St. Rep. 658. The Kingman Case, above cited, proceeded upon the rule adopted in the federal courts as to the effect of a plaintiff's acquirement of stock after the acts sought to be disaffirmed were committed, which rule is no longer followed in this state. Pollitz v. Gould, 202 N. Y. 11, 94 N. E. 1088. My conclusion is that the second defense is insufficient in substance.

[5] The third defense is that the plaintiff, when once protesting against the plan, at the time of its adoption, and again in certain actions brought by him after that time, failed to state the same grounds of invalidity which he now asserts. I do not find any element of estoppel in the facts so presented. The rule which holds a suitor to his once stated objections, when asserting the default of a party with whom he has contracted, has no application. That rule proceeds upon the ground that when the day for the performance of a contract arrives, and one party asserts a specific reason for claiming the other party's default, additional grounds which might have been obviated, if stated, should be deemed waived because the party whose default is alleged had no reason to believe that the grounds not stated were actually in question and to be met. As between the directors of a corporation and a stockholder insisting upon his legal right to the protection of his interests against an ill advised or illegal act of the corporation, no relation exists which calls for the application of the rule referred to. Indeed, the defense does not suggest that the form of the plaintiff's protest or his omission to state all of his grounds of attack had or could have had any effect upon the vote taken for the adoption of the plan, and, in so far as he omitted his present ground from suits afterwards instituted, he was certainly under no duty to the defendants to frame his actions, brought for his own protection, in any particular manner, except so far as he might be precluded by a defense of a former adjudication, a matter not involved in the averments before me. The third defense is therefore demurrable.

[6] The proposition sought to be maintained by the fourth defense, that purchasers of the new bonds and stock issued under the plan in question are necessary parties, has been distinctly negatived upon demurrer to the complaint (Pollitz v. Wabash R. R. Co., 142 App. Div. 755, 127 N. Y. Supp. 782), and the allegation of nonjoinder of these parties presents no matter of defense to the cause of action. If, as contended by the defendants, the omission of such parties is to limit the scope of the judgment to be rendered, and is a ground available to these defendants, then the facts alleged are effective only as a partial defense, and the allegations, framed as presenting a complete defense, are open to demurrer.

For the reasons stated, the demurrers are severally sustained to each of the four separate defenses set up by the answers, with costs, with leave to defendants to amend upon payment of costs within 20 days.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, MILLER, and DOWLING, JJ.

J. A. Hodge, for plaintiff.
Rush Taggart, for defendants.

PER CURIAM. Judgment affirmed, with costs, with leave to defendants to answer on payment of costs, on opinion of Bischoff, J., at Special Term. Order filed.